IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
ABILENE DIVISION

CORRY GARCIA,                        §
Institutional ID No. 2365886         §
                                     §
         Plaintiff,                  §
                                     §    Civil Action No. 1:23-CV-00140-BU
v.                                   §
                                     §
PATRICK L. O'DANIEL, *et al.*,       §
                                     §
         Defendants.                 §
                                     §

## **FINDINGS, CONCLUSIONS, AND RECOMMENDATIONS OF THE UNITED STATES MAGISTRATE JUDGE**

Plaintiff CORRY GARCIA, an inmate at TDCJ Robertson Unit, brings this action against Defendants Patrick L. O'Daniel, Garth Parker, Bryan Collier, Justin Taylor, Bobby Lumpkin, and Carly Kim (collectively, "the Defendants"), alleging that they violated his constitutional rights. Garcia's claims are subject to judicial screening under 28 U.S.C. §§ 1915, 1915A because he has been granted leave to proceed *in forma pauperis*, Dkt. No. 15, and sues government officials, *see* Dkt. No. 12. For the reasons below, the undersigned recommends that the Court DISMISS each of Garcia's claims without prejudice.

## **I. JURISDICTION**

Garcia brings his claims under 42 U.S.C. § 1983, providing the Court with subject-matter jurisdiction under 28 U.S.C. § 1331. Dkt. No. 12. Venue is proper in the Northern District of Texas, Abilene Division, because Garcia's claims arise from his incarceration at Robertson Unit located in Jones County, Texas. 28 U.S.C. § 1391(b)(2). The

undersigned has the authority to enter these Findings, Conclusions, and Recommendations after United States District Court Judge James Wesley Hendrix transferred Garcia's case to the undersigned for preliminary screening. Dkt. No. 18; 28 U.S.C. § 636(c)(1). Garcia has not consented to the undersigned exercising the full jurisdiction of this Court.

## II.  FACTUAL BACKGROUND

For purposes of screening a plaintiff's complaint under 28 U.S.C. §§ 1915(e)(2)(B) or 1915A, a court must accept well-pleaded factual allegations as true and view them in the light most favorable to the plaintiff. *Alderson v. Concordia Par. Corr. Facility*, 848 F.3d 415, 419 (5th Cir. 2017). A court may look to the plaintiff's allegations in their complaint, responses to a questionnaire, authenticated prison or jail records, and testimony provided at a *Spears* hearing. *See Berry v. Brady*, 192 F.3d 504, 507 (5th Cir. 1999); *see also Banuelos v. McFarland*, 41 F.3d 232, 234 (5th Cir. 1995) (holding that courts may consider authenticated medical and prison records).

### A.  Factual Allegations

Garcia arrived at the TDCJ Robertson Unit in February 2022, where he has remained incarcerated since. Dkt. No. 17 at 2. Garcia alleges that the food provided has been inadequate for the duration of his time at the Robertson Unit. *Id*. Specifically, Garcia alleges that TDCJ food service is systemically deficient in the following ways: (1) TDCJ meals do not provide an adequate number of calories and (2) TDCJ meals do not include an adequate variety of food groups to provide necessary nutrients.

2

### 1. *Insufficient Calories*

Garcia alleges that, on average, meals served in TDCJ provide 1200–1600 calories a day. Dkt. No. 17 at 2. For example, Garcia provided a caloric breakdown of all the food he was provided on January 25, 2023. *Id.* For lunch he was provided: a slice of salami (140 calories), mix of veggies (40 calories), mashed potatoes (110 calories), beans (160 calories), and cornbread (140 calories). This totaled 590 calories. For dinner he was provided: bologna (120 calories), sweet potatoes (100 calories), black beans (160 calories), and cornbread (140 calories). This totaled 520 calories. Therefore, on that specific day, Garcia was provided with 1,110 calories. Furthermore, whenever a typical lunch or dinner is replaced with a "Jhonny meal", the Jhonny will either consist of a peanut-butter and jelly (PBJ) sandwich (269 calories) or a bologna or salami sandwich (260 calories). *Id.*

Low calorie counts are further exacerbated by the TDCJ practice of watering down meals. Garcia alleges that "upon information and belief," five of the Defendants "have adopted a policy or practice of limiting the amount of food items distributed to each unit" and that this practice resulted in the need to "water down the food to make it stretch." Dkt. No. 12 at 5. Because of this, the most common foods served to inmates—such as stew, gravy, chili, sloppy joes, and pot pies—are often 50% water. *Id.*

### 2. *Inadequate Variety and Nutrition*

Garcia also alleges that meals served at TDCJ do not contain enough food groups to preserve inmate health. In particular, TDCJ meals lack sufficient fresh fruit and vegetables, citrus fruits and juices, unprocessed meat protein, whole grains, seeds and nuts, dairy products, and probiotics. Dkt. No. 12 at 6. As a result, the TDCJ diet is deficient in calories,

3

meat protein, calcium, iron, magnesium, probiotics, vitamin D, vitamin C, and Zinc. *Id*. Garcia claims that the typical TDCJ diet instead consists mostly of starch and carbs. Dkt. No. 17 at 2.

    3.  *Health Consequences*

As a result of being denied nutritious and well-balanced meals, Garcia alleges that he is at a substantial risk of future harm including becoming sicker and suffering premature death. Garcia takes a blood thinner called Coumadin, and the doctor that prescribed it directed Garcia to eat healthily, which is impossible due to TDCJ's diet. Dkt. No. 17 at 3. The unhealthy diet "messes with" his medication by fluctuating his blood thinner. *Id*. Garcia then clarified that this lawsuit is not about current or past injuries but is about the general risks that an older and unhealthy man faces when forced to endure TDCJ's unhealthy diet for a prolonged period of time. *Id*.

**B.  Alleged Defendant Misconduct**

Based on the above, Garcia alleges particular acts of misconduct against each Defendant. First, Garcia alleges that Defendant Kim "created the outdated menu." Dkt. No. 12 at 5. He further alleges that, as the creator of the menu, Kim is aware that it consists largely of "starchy and carby food," yet has refused to take any meaningful action to update the menu to a constitutionally adequate level. *Id*.

Second, Garcia alleges that Defendant Parker did nothing to address the deficient TDCJ meal plan, despite being aware that the meal plan provided insufficient nutrition. On March 7, 2023, Parker admitted in an interview on "The Tank" that they were "serving a 1970s, 1980s menu" and that they served "a lot of starchy and carby food," while also

4

expressing concern about the "health of individuals that . . . eat the food we have."[1] *Id*. at 5. Despite these statements, food quality did not improve.

Third, Garcia alleges that "upon information and belief, Defendants O'Daniel, Collier, Lumpkin, Parker, and Taylor have adopted a policy or practice of limiting the amount of food items distributed to each unit." *Id*. This practice has forced the unit administrators to: (1) drastically limit the amount and variety of food served and (2) water down the food to make it stretch. *Id*.

Lastly, Garcia alleges that all six Defendants "are the only state officials who have direct control or influence over the content of TDCJ diets and feeding practices." *Id*. at 7. He further generally alleges that all Defendants are aware of the calorically and nutritionally inadequate diet but have taken no actions to improve it. *Id*.

### III. THE PARTIES

Garcia filed his initial suit with nine co-plaintiffs on March 16, 2023, asserting claims against 14 high-ranking TDCJ officials.[2] Dkt. Nos. 1 at 1–2; 2 at 30–32. The complaints by the co-plaintiffs were severed, and Garcia filed an amended complaint against six of the original Defendants in their official capacities[3]: (1) TBCJ Chairperson O'Daniel,

---

[1] The Court takes judicial notice that "The Tank" is the first radio station that launched inside a TDCJ facility, beginning in 2020. *See* https://www.tdcj.texas.gov/connections/-articles/2024/20240600.12_Radio_Redemption.html (last visited April 8, 2026).

[2] *See Panus et al v. Collier et al*, No. 1:23-cv-00086-H-BU (N.D. Tex. March 16, 2023) [Dkt. No. 1]. The class action was then transferred from the Western District of Texas to the Northern District of Texas on April 25, 2023. *Id*. at Dkt. Nos. 5; 6.

[3] Garcia does not specify whether he sues Defendants in their individual capacities, official capacities, or both. However, because he seeks only injunctive relief against state officials for an alleged ongoing violation of federal law, he must sue the officials in their official capacities, not their personal capacities, as explained below in the discussion of the *Ex Parte Young* exception to Eleventh Amendment immunity.

(2) TDCJ Executive Director Collier, (3) TDCJ-CID Director Lumpkin, (4) TDCJ-LFS Division Director Parker, (5) TDCJ-LFS Operations Manager Taylor, and (6) Senior Dietician Kim. Dkt. No. 12. Garcia has further supplemented his claims through his response to the Court's questionnaire. Dkt. No. 17.

Since filing his Complaint, some of these Defendants no longer hold the position sued. Because Garcia sues Defendants only in their official capacities, it is appropriate to substitute the original Defendants with the individuals who now hold their positions. Thus, the Court substitutes the current holders of these positions as follows:

- **Eric Nichols**, current Chairman of the Texas Board of Criminal Justice, replaces former Chairman Patrick L. O'Daniel;

- **Eric Guerrero**, current TDCJ-CID Director, replaces former CID Director Bobby Lumpkin;

- **Bobby Lumpkin**, current TDCJ Executive Director and former TDCJ-CID Director, replaces former Executive Director Bryan Collier;

- **David Driskell**, current TDCJ-LFS Division Director, replaces former LFS Division Director Garth Parker; and

- **Darlene Trejo**, current TDCJ-LFS Operations Manager, replaces former Operations Manager Justin Taylor.

*See* Fed. R. Civ. P. 25(d). **The Clerk is directed to conform the docket to reflect these substitutions**.

The Court construes Garcia's pleadings as alleging the following acts of misconduct by Defendants: (1) endorsing or failing to address the practice of serving calorically and

nutritionally deficient meals; and (2) negligent failure to remain informed about deficiencies in meals served at TDCJ units.

## IV.  LEGAL STANDARDS

A court must dismiss a complaint filed *in forma pauperis* or filed by a prisoner against a government entity or employee if the court determines the complaint is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. §§ 1915(e)(2)(B); 1915A(b) (applying section to any suit by a prisoner against certain governmental entities, regardless of whether the prisoner is proceeding *in forma pauperis*).

A frivolous complaint lacks any arguable basis, either in fact or in law, for the wrong alleged. *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). A complaint lacks an arguable basis in fact if it rests upon clearly baseless factual contentions, and similarly, it lacks an arguable basis in law if it contains indisputably meritless legal theories. *See id.* at 327; *Geiger v. Jowers*, 404 F.3d 371, 373 (5th Cir. 2005).

Dismissal for failure to state a claim—whether under Section 1915(e)(2)(B)(ii), Section 1915A(b)(1), or Rule 12(b)(6)—"turns on the sufficiency of the 'factual allegations' in the complaint." *Smith v. Bank of Am., N.A.*, 615 F. App'x 830, 833 (5th Cir. 2015) (per curiam) (quoting *Johnson v. City of Shelby*, 574 U.S. 10, 12 (2014) (per curiam)). Thus, if a plaintiff "plead[s] facts sufficient to show" that the claims asserted have "substantive plausibility" by stating "simply, concisely, and directly events" that they contend entitle them to relief, the claims should not be dismissed merely because the plaintiff fails to articulate the proper legal theory that otherwise makes those facts actionable in court.

*Johnson*, 574 U.S. at 11–12 (citing Fed. R. Civ. P. 8(a)(2)–(3), (d)(1), (e)).

Courts accept *well-pleaded* factual allegations as true. *Chhim v. Univ. of Tex. at Austin*, 836 F.3d 467, 469 (5th Cir. 2016). This means the factual allegations, while not required to be detailed, must amount to more than mere labels, conclusions, or a statement of the legal elements of a claim. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)); *see also Chhim*, 836 F.3d at 469.

For claims to be substantively plausible, a plaintiff need not establish that the pleaded facts probably occurred as alleged, but the facts must allow the court "to infer more than the mere possibility of misconduct." *Harold H. Huggins Realty, Inc. v. FNC, Inc.*, 634 F.3d 787, 796 (5th Cir. 2011) (quoting *Iqbal*, 556 U.S. at 678–679). Even pro se plaintiffs must plead facts that raise the right to relief above a speculative level. *Chhim*, 836 F.3d at 469 (citing *Taylor v. Books A Million, Inc.*, 296 F.3d 376, 378 (5th Cir. 2002)). And when plaintiffs "have not nudged their claims across the line from conceivable to plausible, their complaint must be dismissed." *Twombly*, 550 U.S. at 570.

When evaluating a complaint under these standards, courts liberally construe the pleadings of pro se plaintiffs, holding their complaints to "less stringent standards than formal pleadings drafted by lawyers." *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). But "liberal construction does not require that the Court . . . create causes of action where there are none." *Smith v. CVS Caremark Corp.*, No. 3:12-cv-2465-B, 2013 WL 2291886, at *8 (N.D. Tex. May 23, 2013). "To demand otherwise would require the 'courts to explore exhaustively all potential claims of a *pro se* plaintiff'" and would "'transform the district court from its legitimate advisory role to the improper role of an advocate seeking out the

strongest arguments and most successful strategies for a party.'" *Jones v. Mangrum*, No. 3:16-cv-3137, 2017 WL 712755, at *1 (M.D. Tenn. Feb. 23, 2017) (quoting *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985)).

Ultimately, "'[d]etermining whether a complaint states a plausible claim for relief' is 'a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'" *Inclusive Cmtys. Project, Inc. v. Lincoln Prop. Co.*, 920 F.3d 890, 899 (5th Cir. 2019) (quoting *Iqbal*, 556 U.S. at 679).

## V.  ANALYSIS

To state a claim under § 1983, Garcia must plausibly "allege facts showing that a person, acting under color of state law, deprived him of a right, privilege or immunity secured by the United States Constitution or the laws of the United States." *Bryant v. Mil. Dept. of Miss.*, 597 F.3d 678, 686 (5th Cir. 2010). A convicted prisoner's rights "spring from the Eighth Amendment's prohibition on cruel and unusual punishment" and, in extreme situations, the substantive due process provision of the Fourteenth Amendment. *Hare v. City of Corinth, Miss.*, 74 F.3d 633, 639 (5th Cir. 1996) (citing *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). Each of Garcia's allegations, except for his negligence claim, are Eighth Amendment allegations based on alleged cruel and unusual punishment.

"The treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment." *Gates v. Cook*, 376 F.3d 323, 332 (5th Cir. 2004). "In order to establish an Eighth Amendment conditions of confinement claim, [a prisoner] would have to establish 'first, that the deprivation alleged was sufficiently serious . . . and second, that the prison official possessed a sufficiently culpable

9

state of mind.'" *Burleson v. Texas Dep't of Crim. Just.,* 393 F.3d 577, 589 (5th Cir. 2004) (quoting *Herman v. Holiday,* 238 F.3d 660, 664 (5th Cir.2001)).

A prisoner must allege a sufficiently serious deprivation to prevail on their Eighth Amendment claim. A deprivation is sufficiently serious if it objectively exposes the prisoner "to a substantial risk of serious harm" and causes "the denial of the minimal civilized measure of life necessities." *Arenas v. Calhoun*, 922 F.3d 616, 620 (5th Cir. 2019) (citing *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)). That conditions are "restrictive or even harsh" is not enough to demonstrate that they are sufficiently serious. *Coleman v. Dallas Cnty. Jail*, No. 3:19-cv-3009-L-BN, 2020 WL 7029915, at *4 (N.D. Tex. October 22, 2020); *see Carter v. Brown*, No. 1:20-cv-01376, 2021 WL 1556374, at *2 (W.D. La. April 1, 2021).

The alleged violation must also be caused by a defendant with a sufficiently culpable state of mind. "The requisite state of mind is whether 'the official acted with deliberate indifference to inmate health or safety.'" *Burleson,* 393 F.3d at 589. "To establish deliberate indifference the [prisoner] must show that the officials '(1) were aware of facts from which an inference of excessive risk to the prisoner's health or safety could be drawn and (2) that they actually drew an inference that such potential for harm existed.'" *Id.* (internal citations omitted). "The crucial question in determining an Eighth Amendment claim 'is whether the prison official, acting with deliberate indifference, exposed a prisoner to a sufficiently substantial risk of serious damage to his future health.'" *Farmer v. Brennan,* 511 U.S. 825, 843 (1994) (quoting *Helling v. McKinney,* 509 U.S. 25, 35 (1993)).

Each of Garcia's claims are brought against TDCJ officials in their official capacity.

Suits brought against a defendant in their official capacity are functionally brought against the state itself. *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989). Thus, the undersigned must first evaluate whether the Eleventh Amendment bars Garcia's claims against the TDCJ. Because many of Garcia's claims are based on caloric or nutritional deficiency, the undersigned will then analyze when a prison diet is constitutionally inadequate. Lastly, the undersigned will evaluate each of Garcia's claims to determine whether he has alleged a sufficiently serious deprivation of life's necessities and the deliberate indifference of the relevant defendants.

### A.  Eleventh Amendment Bar and *Ex parte Young* Exception

Under the Eleventh Amendment, states are immune from suit in federal court. *Quern v. Jordan*, 440 U.S. 332, 342 (1979); *Perez v. Region 20 Educ. Serv. Ctr.*, 307 F.3d 318, 326 (5th Cir. 2002) ("The Eleventh Amendment bars an individual from suing a state in federal court unless the state consents to suit or Congress has clearly and validly abrogated the state's sovereign immunity."). This immunity "encompasses not only actions in which a State is actually named as the defendant, but also certain actions against state agents and state instrumentalities." *Sw. Bell Tel. Co. v. City of El Paso*, 243 F.3d 936, 937 (5th Cir.2001) (quoting *Regents of the Univ. of Cal. v. Doe*, 519 U.S. 425, 429 (1997)). As a state instrumentality, TDCJ itself comes within the protections of Eleventh Amendment immunity from suit.[4] Because Defendants are officers within TDCJ being sued in their

---

[4] *See Cox v. Texas*, 354 F. App'x 901, 902 (5th Cir. 2009) ("Under the current state of the law, the TDCJ is deemed an instrumentality of the state operating as its alter ego in carrying out a public function of the state, and is immune from suit under the Eleventh Amendment.") (citing *Harris v. Angelina County*, Tex., 31 F.3d 331, 338 n. 7 (5th Cir.1994)); *see also Aguilar v. Tex. Dep't of Criminal Justice*, 160 F.3d 1052, 1054 (5th Cir.1998).

official capacity, each of Garcia's claims are essentially suits against TDCJ, which is immune to suit under the Eleventh Amendment. *Will*, 491 U.S. at 71.

But in *Ex parte Young*, the Supreme Court carved out an exception to Eleventh Amendment immunity to allow suits seeking *prospective* relief against a state official in their *official capacity* to prevent *future constitutional or federal statutory violations*. 209 U.S. 123 (1908); *see Aguilar v. Tex. Dep't of Criminal Justice*, 160 F.3d 1052, 1054 (5th Cir.1998). The rationale underlying the *Ex parte Young* doctrine is that state officials who violate federal law are not acting for the state, but instead as individuals, and the Eleventh Amendment does not protect individuals. *Ex parte Young*, 209 U.S. at 159–60.

This rationale engages in somewhat of a fiction, in that any prospective relief ordered by a federal court against that individual would almost certainly impact the state treasury, the protection of which is one of the central purposes of the Eleventh Amendment. *Hess v. Port Auth. TransHudson Corp.*, 513 U.S. 30, 48 (1994). But the Supreme Court has sanctioned this fiction. *Milliken v. Bradley*, 433 U.S. 267, 289 (1977) (stating the *Ex parte Young* exception "permits federal courts to enjoin state officials to conform their conduct to requirements of federal law, notwithstanding a direct and substantial impact on the state treasury.").

The *Ex parte Young* exception applies when a complaint (1) seeks prospective relief (2) for an ongoing violation of federal law (3) against officials who have some connection with the alleged violation. *Tex. All. for Retired Ams. v. Scott*, 28 F.4th 669, 672 (5th Cir. 2022); *Cantu Servs., Inc. v. Roberie*, 535 Fed. Appx. 342, 344–45 (5th Cir. 2013). The third prong ensures that, when *Ex parte Young* is invoked, "the proper defendant is a state official

acting in violation of federal law who has a 'sufficient connection' to enforcing an allegedly unconstitutional law." *Valentine v. Collier*, 993 F.3d 270, 280 (5th Cir. 2021).

Here, the first element of *Ex parte Young* is satisfied because Garcia seeks only prospective relief; he requests that the court grant an injunction "ordering Defendants to provide three wholesome and nutritional meals per day of adequate caloric quantity." Dkt. No. 12 at 4. The undersigned also assumes, for the purposes of screening, that each Defendant is sufficiently connected to the alleged violations to satisfy the third element of *Ex parte Young*.[5] The issue presented is whether Garcia alleges an ongoing violation of federal law that satisfies the second element.

Garcia's claims are based on alleged systemic violations of the Eighth Amendment, and thus if properly alleged would satisfy the second *Ex parte Young* element. For each claim, if Garcia alleges sufficient facts to plausibly plead the violation and deliberate indifference prongs of a conditions-of-confinement claim, then Garcia has also alleged an ongoing violation of federal law that permits the claim to pass the Eleventh Amendment bar. Conversely, any claims that are not sufficiently supported to survive judicial screening are also barred by the Eleventh Amendment.

## B. Constitutional Requirements for Inmate Diet

The primary basis of Garcia's claims is that the TDCJ diet lacks sufficient calories

---

[5] Garcia's Complaint centers on alleged systemic food conditions experienced at TDCJ facilities. Parker and Taylor are each sufficiently connected to these alleged violations because they oversee the TDCJ Laundry, Food, and Supply division. Dkt. No. 12 at 3–5. Kim is also sufficiently connected because, as TDCJ's Senior Dietician, she allegedly has influence over the food that is served at TDCJ. Dkt. No. 12 at 3–. 5. Lastly, O'Daniel, Collier, and Lumpkin are each high-ranking officials in TDCJ or TBCJ, and thus have oversight over the other defendants. Dkt. No. 12 at 3–5.

and nutrients to sustain an adult. Dkt. No. 12 at 6–7. The Eighth Amendment requires prison administrators to provide for an inmate's basic needs, including reasonably adequate food. *Newman v. State of Ala.*, 559 F.2d 283, 291 (5th Cir. 1977). Most Fifth Circuit cases that address prison food are brought by inmates who have been denied meals altogether, rather than inmates receiving consistent but inadequate meals;[6] however, the Constitution undoubtedly protects inmates from both forms of starvation. *George v. King*, 837 F.2d 705, 707 (5th Cir. 1988) ("Certainly, the Constitution does not tolerate the administrative trans-formance of a sentence of several years' imprisonment to one of a gulag-type death by incremental starvation."). In order to apply existing case law to Garcia's allegations, the undersigned offers the following summary of Fifth Circuit precedent on prison meals.

Under the Eighth Amendment, the meals provided to prison inmates must be nutri-tionally and calorically adequate. *Green v. Ferrell*, 801 F.2d 765, 770–71 (5th Cir. 1986). However, no bright-line test exists for determining when a prison diet is inadequate. Prior case law makes it clear that a prison diet is not inadequate merely because it does not satisfy the standards set by prison policy, state agencies, or expert recommendations.[7]

It is also clear that courts cannot rely solely on the presence or absence of physical

---

[6] *See, e.g.*, *Berry v. Brady*, 192 F.3d 504 (5th Cir. 1999) (prisoner denied 8 meals); *Talib v. Gilley*, 138 F.3d 211 (5th Cir. 1998) (prisoner denied 50 meals); *Eason v. Thaler*, 14 F.3d 8 (5th Cir. 1994) (prisoner denied 72 meals).

[7] *Samford v. Dretke*, 562 F.3d 674, 681 (5th Cir. 2009) ("[A] prison official's failure to follow the prison's own policies does not, itself, result in a constitutional violation."); *Balli v. Haynes*, 804 F.2d 306, 308 (5th Cir. 1986) ("[T]he violation of state standards does not per se violate the federal Constitution. State stand-ards do not establish federal constitutional standards."). *Green*, 801 F.2d at 771 (reversing order to comply with "recognized daily requirements" because "[e]xpert recommendations do not create constitutional standards under the eighth amendment").

14

symptoms. Prior Fifth Circuit courts have based their holdings on the presence or absence of symptoms,[8] but actual injury cannot be a dispositive issue; Eighth Amendment case law requires a prisoner to show only a substantial risk of harm, not *actual* harm. "'[I]t is cruel and unusual punishment to hold convicted criminals in unsafe conditions,' regardless of whether those conditions actually cause injury." *Garrett v. Lumpkin*, 96 F.4th 896, 900 (5th Cir. 2024) (quoting *Helling v. McKinney*, 509 U.S. 25, 33 (1993)). Thus, prisoners cannot be required to allege actual injury or demonstrate that prison practices caused their symptoms.[9] *Id.* at 901.

Rather than rely on expert recommendations, state standards, or evidence of injury, courts must analyze prisoner deprivations by the "amount and duration of the deprivation." *Berry v. Brady*, 192 F.3d 504, 507 (5th Cir. 1999) (quoting *Talib v. Gilley*, 138 F.3d 211, 214 n. 3 (5th Cir. 1998)). Fifth Circuit courts have held that a *de minimis* deprivation of merely one or two meals clearly does not pose a substantial risk to inmates.[10] The consistency of the deprivation is also relevant; where one prisoner may face a serious risk when denied consecutive meals, another prisoner denied a comparable number of meals across a longer period may not.[11] Naturally, missing ten meals across five days poses a

---

[8] *Compare Fountain v. Rupert*, 819 F. App'x 215, 219 (5th Cir. 2020) (reversing dismissal of prisoner's claim because he alleged starvation resulting in "extreme weight loss and other nutritional issues") *with Berry v. Brady*, 192 F.3d 504, 508 (5th Cir. 1999) (dismissing prisoner's claim because he had not alleged that he "lost weight or suffered other adverse physical effects").

[9] This is not to say that evidence of harm is irrelevant to the court's analysis. Actual injury is persuasive evidence that a substantial risk existed; the absence of injury may, to a lesser extent, indicate that the risk was insubstantial. What is clear is that the lack of actual harm cannot be fatal to a prisoner's claim.

[10] *Spicer v. Collins*, 9 F. Supp. 2d 673, 687 (E.D. Tex. 1998) (missing a single meal not a violation); *Romero v. Lann*, 305 F. App'x 242, 243 (5th Cir. 2008) (missing 2 meals over 8 months not a violation).

[11] *Compare Cooper v. Sheriff, Lubbock Cnty., Tex.*, 929 F.2d 1078 (5th Cir. 1991) (missing 36 consecutive

different degree of risk than missing ten meals across fifty days.

*Gonzalez v. Corr. Corp. of Am.* and *Green v. Ferrell* illustrate when the proportion of meals missed begins to pose a substantial risk. In *Gonzalez*, the court held that a prisoner suffered a substantial risk when he was denied meals on 21 out of 41 days—slightly more than half of his meals across the relevant period. 344 F. App'x 984, 986 (5th Cir. 2009). By comparison, the court in *Green* held that there was no constitutional right to receive three meals a day rather than two. 801 F.2d 765, 878–79 (5th Cir. 1986). Thus, a prisoner likely begins to face a substantial risk when he is denied between 30% and 50% of his meals.[12]

Because a consistently inadequate diet poses similar risks to one in which meals are frequently denied, the guidelines above can be applied to cases like Garcia's. As before, the "amount and duration" of the diet deficiency is the relevant standard. *Berry*, 192 F.3d at 507 (quoting *Talib*, 138 F.3d at 214 n. 3). Unlike in meal-denial cases, the prisoner usually alleges that their diet is *consistently* inadequate; because such a deficiency is of significant duration, the analysis turns primarily on the amount of the deficiency.

When the caloric or nutritional deficiency alleged is *de minimis*, the prisoner's diet is likely adequate and the risk insubstantial. *See, e.g., Green*, 801 F.2d at 770–71 (holding that a prison diet deficient only in vitamin D was constitutionally adequate). Beyond this *de minimis* bar, a prison diet begins to pose a substantial risk when it lacks between 33%

---

meals across 12 days was a violation) *with Talib v. Gilley*, 138 F.3d 211, 214 n. 3 (5th Cir. 1998) (missing 50 meals across 5 months likely not a violation). Although the court in *Talib* assumed the prisoner suffered a Constitutional harm for the sake of argument, it did so with reservation, noting that Talib was likely not "denied anything close to a minimal measure of life's necessities." *Talib*, 138 F.3d at 214 n. 3.

[12] These percentages are offered only as a general guide. Additional factors, such as the prisoner's health and the duration of the deprivation, clearly affect the severity of the risk; the court must still engage in a fact-specific assessment of the risk a prisoner faces.

and 50% of a prisoner's dietary needs.

This analysis requires a point of reference that the alleged caloric or nutritional deficiencies can be compared to. The undersigned finds it helpful to consider accepted expert guidelines, such as the USDA Dietary Guidelines for Americans, when evaluating a prisoner's dietary needs. That expert opinion is relevant to the Court's analysis does not violate *Green's* admonition that "expert recommendations do not *create* constitutional standards." 801 F.2d at 771 (5th Cir. 1986) (emphasis added). In fact, the court in *Green* based its holding in part on the expert testimony provided at trial. *Id.* at 770–71. Like the court in *Green*, the undersigned refers to the USDA guidelines as a guide to evaluate adequacy, not as a constitutional minimum.[13]

With this foundation laid, the undersigned now turns to the substance of Garcia's allegations against the Defendants.

### C.  Claim 1: Caloric and Nutritional Sufficiency of TDCJ Meals

Garcia's first claim is that TDCJ meals are calorically and nutritionally deficient. He alleges that meals served at TDCJ provide on average 1200–1500 calories. Dkt. No. 17 at 2. He also alleges that TDCJ serves an outdated menu based primarily on starch and carbs; as a result, the food served lacks several necessary nutrients, including meat protein,

---

[13] The Sixth Circuit case *Landman v. Royster* provides an example of this type of analysis. When discussing the constitutionality of a bread and water diet, the court noted that such a diet provides "only 700 calories, whereas sedentary men on the average need 2000 calories or more to maintain continued health." *Landman v. Royster*, 333 F. Supp. 621, 647 (E.D. Va. 1971), *supplemented,* 354 F. Supp. 1302 (E.D. Va. 1973). The relevant finding here was not that the prison diet provided less than the needed 2000 calories, but that it offered *substantially* less, to the point of constituting a denial not only of "physical comforts but of necessities." *Id.* Similarly, the court noted that the "vitamin, protein, and mineral content [was] probably deficient as well," even without evidence presented on that issue. *Id.*

calcium, vitamin C, and vitamin D, among others. Dkt. No. 12 at. 5–6. Meals served at TDCJ have been deficient since Garcia was first incarcerated in 1998, but became "10 times worse" during his second incarceration; when he was assigned to the Robertson Unit in February 2022 and where he still remains. Dkt. No. 17 at 1–2.

For this claim to survive judicial screening, Garcia must satisfy the two-prong test for a conditions-of-confinement claim by showing: (1) the caloric and nutritional deficiencies objectively posed a substantial risk of serious harm; and (2) the Defendants were deliberately indifferent to the substantial risk. *Burleson,* 393 F.3d at 589.

### 1. *Does the TDCJ Diet Pose a Substantial Risk of Serious Harm?*

Garcia must first demonstrate that the practice of undersupplying TDCJ units exposed him to a substantial risk of serious harm. Here, Garcia alleges that the caloric and nutritional value of the food served is so deficient as to create a substantial risk. He claims that the meals provided offer 50% of the USDA requirements: only 1200–1600 calories rather than the 2200–3000 recommended. Dkt. No. 17 at 2. He also claims that the meals served lack several essential nutrients, including meat protein, calcium, iron, magnesium, probiotics, vitamins D and C, and zinc. Dkt. No. 12 at. 6.

Garcia has plausibly alleged a sufficient deprivation of calories. While Garcia cannot rely solely on TDCJ's failure to satisfy USDA Dietary Guidelines, *Green*, 801 F.2d at 771, his claim properly specifies the degree to which the calories provided fall short of the daily requirement. Garcia, who alleges that he is denied roughly 50% of his caloric needs per meal, is comparable to the prisoner in *Gonzalez*, who successfully pleaded that he was denied roughly 50% of his meals. *Gonzalez*, 344 F. App'x at 986. This is sufficient to show

that a substantial risk exists.[14]

However, Garcia has failed to allege a sufficient deprivation of nutrients. To support his claim, Garcia cites a 2023 interview in which Defendant Parker admits that TDCJ served a "1970s, 1980s menu" that included "a lot of starchy and carby food," and that they were "concerned about the health of individuals that . . . eat the food [they] have." Dkt. No. 12 at 5. However, the Fifth Circuit has held that a prison diet consisting mainly of starch and carbs, while "dull," is not serious enough to require court intervention. *Jones v. Diamond*, 636 F.2d 1364, 1378 (5th Cir. 1981), *overruled on other grounds by Int'l Woodworkers of Am., AFL-CIO & its Loc. No. 5-376 v. Champion Int'l Corp.*, 790 F.2d 1174 (5th Cir. 1986).

The diet described in Garcia's filings is also not as carb-heavy as he claims. The typical TDCJ lunch and dinner that he describes contains meat and legumes. Dkt. No. 17 at 2. For example, Garcia provides an "example of [an] average meal" as consisting of 4 ounces of beans, 2 ounces of gravy mix, 2 ounces of beef or pork, a canned vegetable, another 4 ounces of beans, and either white bread or corn bread. *Id*. The meals described lack only vitamin C, probiotics, and calcium;[15] however, a menu deficient in only one or

---

[14] Garcia does not allege a substantial weight loss—or any weight loss—associated with the calorie deficit. *See* Dkt. No. 17 at 3. Nonetheless, the holding in *Garrett v. Lumpkin* cautions against placing undue weight on the absence of physical symptoms. 96 F.4th 896, 901. The undersigned remains persuaded that Garcia has alleged exposure to a substantial caloric risk.

[15] Garcia describes only examples of typical lunches or dinners. *See* Dkt. No. 17 at 2. He does not describe a typical breakfast or the calories and nutrients associated with that meal. Nor does he clearly allege whether he is consistently provided breakfast. Instead, he states that he sometimes receives only a PBJ sandwich as a breakfast "Johnny." *Id*. Because Johnny sacks are served during staffing shortages, the undersigned reasonably infers that Garcia is ordinarily provided a standard breakfast—which he has not described in his pleadings—but that, during periods of staffing shortages, that meal is replaced with a PBJ sandwich.

two nutrients likely imposes a *de minimis* deprivation and is constitutionally adequate. *Green*, 801 F.2d at 770–1 (holding that a diet deficient only in vitamin D was constitutionally adequate). Garcia's pleadings also indicate that inmates are served a wide variety of foods: gravy, ground beef, ground pork, bologna, salami, soy meat, stew, various vegetables, sweet potatoes, mashed potatoes, various beans, white bread, cornbread, and PBJ sandwiches. Dkt. No. 17 at 2. "The lists of meals which [Garcia] provides make clear that he has not been denied reasonably adequate food." *McClure v. TDCJ-CID*, No. 5:10CV66, 2011 WL 806227, at *18 (E.D. Tex. Jan. 31, 2011).

While Garcia is not required to allege physical harm to state an Eighth Amendment claim, the absence of such allegations underscores the weakness of his nutrition-based claims. Here, he does not allege any serious symptoms. Instead, he asserts only that the deficient diet "messes with his blood thinner" by causing it to "fluctuat[e]." Dkt. No. 17 at 3. He declines to answer whether he has ever sought medical attention as a result of the alleged diet and affirmatively states that he has never been diagnosed with any nutrient deficiency. *Id*.

Garcia contends that the proper inquiry is whether the prolonged diet places him at a substantial risk of future harm, such as premature death or a weakened immune system. *Id*. The Court agrees with that framing. However, as discussed above, his own allegations describe a diet that appears relatively nutrient-rich. Taken together, these facts do not plausibly show that the alleged dietary conditions pose a "substantial risk of serious harm" to

Garcia.[16] *Arenas v. Calhoun*, 922 F.3d 616, 620 (5th Cir. 2019) (citing *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)).

In conclusion, Garcia has alleged that caloric deficiency posed a substantial risk of harm, but has not alleged that nutritional deficiency posed a substantial risk of harm.

### 2. *Were Defendants Deliberately Indifferent to a Substantial Risk?*

For each Defendant, Garcia must allege (1) that the Defendant was subjectively aware of facts permitting an inference that a substantial risk existed, and (2) that the Defendant actually drew that inference. *Burleson v. Texas Dep't of Crim. Just.*, 393 F.3d 577, 589 (5th Cir. 2004). Deliberate indifference can be satisfied only by intentional disregard, rather than mere negligence. *Shumpert v. City of Tupelo*, 905 F.3d 310, 316 (5th Cir. 2018). While subjective awareness is difficult to prove, "a factfinder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious." *Farmer v. Brennan*, 511 U.S. 825, 842 (1944). A risk may be obvious if the plaintiff offers evidence that it was "longstanding, pervasive, well-documented, or expressly noted by prison officials in the past," and that "the circumstances suggest that the [defendant] had been exposed to information concerning the risk." *Id.* at 842–43.

Garcia relies on Parker's 2023 interview as evidence of the Defendants' mental state; in the interview, Parker admitted that he and Collier knew that TDCJ served "a lot of starchy and carby food" and were "concerned about [the] health" of the inmates eating it.

---

[16] Garcia provides even less factual support for his nutritional claim than he does for his allegations regarding caloric intake. Moreover, there is no case law supporting the general rule that a person faces a substantial risk when denied 50% of their nutritional needs, while there is for a comparable caloric deficiency.

Dkt. Nos. 12 at 5. Garcia claims that this interview demonstrates that Parker and Kim knew that TDCJ meals were calorically and nutritionally inadequate. *Id*.

Parker's interview statement is insufficient to support Garcia's claim. At the outset, Parker expresses concern only about the menu's *nutritional* value, so his comments do not support Garcia's *caloric* deficiency claim. Even then, the fact that a diet consists of "a lot" of carbs does not, on its own, permit the inference that a *substantial* risk existed. *See Jones*, 636 F.2d at 1378. Similarly, that Parker and others expressed concern for inmate health does not indicate that they inferred that a substantial risk existed, as opposed to a minor or moderate risk. That Parker publicly expressed *any* concern tends to show that he and Kim did not make an "intentional choice" to ignore the problem. *Shumpert*, 905 F.3d at 316.

Garcia's remaining arguments are without merit. He attempts to infer Defendant Kim's awareness of an allegedly deficient menu from her failure to create an updated one. *Id*. Likewise, he asserts—"upon information and belief"—that Defendants O'Daniel, Collier, Lumpkin, Parker, and Taylor were aware of a substantial risk posed by the diet because they purportedly adopted policies reducing the amount of food served, thereby forcing administrators to dilute meals to make them stretch. *Id*.

Critically, Garcia does not allege that any Defendant actually drew the inference that the TDCJ diet posed a substantial risk of serious harm to him or to inmates generally. Rather, aside from Parker's interview, his allegations amount to little more than a contention that Defendants should have known the diet was deficient and dangerous, which is insufficient to establish deliberate indifference. Allegations based on what the Defendants *should* have known sound in negligence, rather than indifference, and negligence alone is

22

insufficient to bring a § 1983 claim. *Shumpert*, 905 F.3d at 316.

Lastly, Garcia cannot rely on the obviousness exception to presume subjective awareness. Garcia alleges that the risks at issue are longstanding and pervasive: he claims the diet was ten times worse starting in February 2022 and that it has not improved since. Dkt. No. 17 at 1–2. However, longstanding and pervasive risks are not obvious unless the defendant was also "exposed to information concerning the risk." *Farmer v. Brennan*, 511 U.S. 825, 842–43 (1944).  Here, Garcia lacks evidence that Defendants were exposed to information concerning the risk; instead, he offers conclusory accusations of knowledge based "upon information and belief." Dkt. No. 12 at 5. The undersigned cannot assume that Defendants were exposed to this knowledge merely because they are high-ranking TDCJ officials.

For each Defendant, Garcia has failed to plausibly allege subjective knowledge of an excessive or severe risk, or that the Defendant actually inferred such a risk existed. Thus, Garcia cannot demonstrate that the Defendants acted with deliberate indifference. Because he has failed to allege facts supporting both elements of his conditions-of-confinement claim, his first claim does not survive judicial screening.[17]

### D.  Claim 2: Negligence

Garcia's final claim is that Defendants negligently failed to ensure the food served

---

[17] The undersigned notes that Garcia raises several practices that allegedly caused nutritional and caloric deficiency: an outdated menu, intentional undersupplying of units, and resulting watering down of meals. Dkt. No. 12 at 5. Here, it is not necessary to perform an individual conditions-of-confinement analysis for each practice because the outcome would be the same. Regardless of which practices, individually or in combination, caused TDCJ meals to be served as they are, the objective risk of harm Garcia faced remains the same. Similarly, Garcia fails to allege any additional facts showing that the defendants were deliberately indifferent.

at TDCJ facilities was calorically and nutritionally adequate. As discussed above, Garcia at times bases his allegations against Defendants on their alleged negligent adoption of a harmful policy or practice. Dkt. No. 12 at 5. Thus, for the sake of thoroughness, the undersigned also construes Garcia's pleadings as bringing negligence claims.

To the extent that he bases his allegations on negligence rather than deliberate indifference, Garcia fails to state a claim. Prisoners cannot bring claims for ordinary or even gross negligence under § 1983; the relevant state of mind is deliberate indifference, which is a "degree of culpability beyond mere negligence or even gross negligence." *Shumpert v. City of Tupelo*, 905 F.3d 310, 316 (5th Cir. 2018). Garcia must instead bring any claims based on negligence in state court. Therefore, his second claim does not survive judicial screening.

## VI.  LEAVE TO AMEND

The undersigned has concluded that none of Garcia's claims survive judicial screening; however, there is the issue of whether the Court must give Garcia leave to amend his complaint. Generally, "a *pro se* litigant should be offered an opportunity to amend his complaint before it is dismissed." *Brewster v. Dretke*, 587 F.3d 764, 767–68 (5th Cir. 2009). Leave to amend is not required, however, where an amendment would be futile, in other words, the amended complaint would still fail to state a claim, *Marucci Sports, LLC v. Nat'l Collegiate Athletic Ass'n*, 751 F.3d 368, 378 (5th Cir. 2014), or where a plaintiff has already received an opportunity to amend his or her claims, *Cent. Laborers' Pension Fund v. Integrated Elec. Servs. Inc.*, 497 F.3d 546, 556 (5th Cir. 2007).

Here, the undersigned concludes that Garcia has pleaded his best case. He has

already described the caloric and nutritional content of his meals in great detail across his Complaint and questionnaire response, Dkt. Nos. 12, 17; thus, it is unlikely that he could allege new facts demonstrating that TDCJ meals posed a more serious risk. More importantly, it is clear that Garcia is unable to plead that Defendants were deliberately indifferent. Garcia relies either on Defendants' leadership positions or Parker's 2023 interview—as already discussed, neither demonstrates subjective awareness of a serious risk. Dkt. No. 12 at 5. For other Defendants, Garcia presumes their knowledge without support or admits outright that he doesn't know their mental state. *Id.* Because it appears that Garcia has pleaded his best case, the undersigned concludes that further leave to amend would be futile.

### VII.  CONCLUSION

Because Garcia has not alleged sufficient facts to plausibly plead the violation and deliberate indifference prongs of a conditions-of-confinement claim, then Garcia has also not alleged an ongoing violation of federal law that permits the claim to pass the Eleventh Amendment bar. Thus, the *Ex parte Young* exception does not apply to his claims and they are each barred by the Eleventh Amendment. *Tex. All. for Retired Ams. v. Scott*, 28 F.4th 669, 672 (5th Cir. 2022). "Sovereign immunity is jurisdictional." *Cozzo v. Tangipahoa Par. Council--President Gov't*, 279 F.3d 273, 280 (5th Cir. 2002). Because Defendants are entitled to sovereign immunity against Garcia's claims, the Court lacks jurisdiction over them.

For the reasons explained above, the undersigned RECOMMENDS that the Court DISMISS Garcia's Eighth Amendment and negligence claims against all Defendants without prejudice.

## VIII. RIGHT TO OBJECT

A copy of these Findings, Conclusions, and Recommendations shall be served on all parties in the manner provided by law. Any party who objects to any part of these Findings, Conclusions, and Recommendations must file specific written objections within fourteen days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). To be specific, an objection must identify the specific finding or recommendation to which the objection is made, state the basis for the objection, and specify the place in the magistrate judge's Findings, Conclusions, and Recommendations where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

## IX.  TRANSFER OF CASE

Having completed the preliminary screening of Garcia's claims, the undersigned ORDERS that this case be TRANSFERRED back to the docket of the United States District Judge and designated as Civil Action No. 1:23-CV-00140-H.

ORDERED this 10th day of April 2026.

_____
JOHN R. PARKER
UNITED STATES MAGISTRATE JUDGE

26